UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALFRED T. DUPRE,

                                Plaintiff,

v.                                                          7:13-CV-1367

                                                              (TJM/TWD)

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
_____

APPEARANCES:                              OF COUNSEL:

STANLEY LAW OFFICES              JAYA SHURTLIFF, ESQ.
*Counsel for Plaintiff*
215 Burnett Avenue
Syracuse, New York, 13203

HON. RICHARD S. HARTUNIAN      GRAHAM MORRISON, ESQ.
United States Attorney for the          Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL       STEPHEN P. CONTE, ESQ.
Social Security Administration          Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the

Honorable Thomas J. McAvoy, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, it is recommended that this matter be remanded to the Commissioner for further proceedings as set forth herein.

## I.        BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is currently 54 years old. (Administrative Transcript "T." at 28, 97.) He served in the United States Marine Corps. and earned a GED in 1980. (T. at 29, 132.) He holds a Class A commercial driver's license, and he was working part time as a supervisor for an independent commercial contractor at the time of the hearing before Administrative Law Judge ("ALJ") Barry E. Ryan. (T. at 29-31, 131.) Prior to that part time work, he worked full time in construction as a driver and as a construction worker for a construction company and a heating and cooling company. (T. at 30-34.) He is safety certified for forklifts and boom lifts. (T. at 31.) Plaintiff alleges disability due to chronic back pain, hernias, knee pain, arm pain, shortness of breath, and heart burn. (T. at 34-37, 131.)

Plaintiff applied for disability insurance benefits on March 8, 2011, alleging disability as of September 1, 2009. (T. at 97-104.) The application was initially denied on May 19, 2011. (T. at 50-54.) Plaintiff requested a hearing which was held on July 17, 2012, before ALJ Ryan, who denied the application in a decision dated August 13, 2012. (T. at 13-20, 24-41.) Plaintiff's last date insured, based upon his earnings record, is December 31, 2014. (T. at 13.) On September 4, 2013, ALJ Ryan's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. (T. at 1-6.) Plaintiff commenced this action on

November 1, 2013.  (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he or she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2006).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("S.S.A.") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  "If at any step a

finding of disability or non-disability can be made, the SSA will not review the claim further."

*Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the
> claimant shows that he is not working at a "substantial gainful
> activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the
> SSA will find non-disability unless the claimant shows that he has a
> "severe impairment," defined as "any impairment or combination of
> impairments which significantly limits the claimant's physical or
> mental ability to do basic work activities."  [20 C.F.R.] §§

404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.* (quoting *Perry*, 77 F.3d at 46).

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010);[1] *see Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be 'more than a mere scintilla' of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

---

[1]       On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Commissioner of Social Security*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55322 (N.D.N.Y. May 17, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Ross v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

### III.    THE ALJ'S DECISION

Here, the ALJ ultimately found that Plaintiff was not disabled at step five of the five-step analysis.  (T. at 19-20.)  The ALJ found that Plaintiff's severe impairments included dyspnea and a "status-post crush injury" involving his back and chest.  (T. at 15-16.)  He found non-severe impairments of hernia, right knee pain, and right arm and shoulder pain.  (T. at 16.)  The ALJ further found that none of the impairments met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*

The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) and that he could lift, carry, push, and pull up to twenty-five pounds occasionally and ten pounds frequently; stand and/or walk and/or sit for six hours in an eight hour work day.  (T. at 17.)  The ALJ found Plaintiff was unable to perform his past relevant work, but that he was capable of light work in the national economy at step five.  (T. at 20.)

### IV.    THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ's determination of Plaintiff's RFC was not supported by substantial evidence because the ALJ erred in failing to properly evaluate the opinions of treating physicians Dr. Bruce Baird and Dr. Michael Lax, and consultant Dr. Sandra Boehlert.  (Dkt. No. 11 at 8 - 10.[2])  Plaintiff also contends that the ALJ erred in assessing the Plaintiff's credibility and in applying the Medical-Vocational Guidelines at step five although Plaintiff had significant nonexertional limitations.  *Id.* at 10-13.  Defendant contends that the ALJ's decision applied the

---

[2]    Citations to page numbers in the parties' briefs reference the actual page number in the brief, not the page number assigned by the Court's electronic filing system.

correct legal standards and is supported by substantial evidence and thus should be affirmed.
(Dkt. No. 13.)

## V. DISCUSSION

### A. Opinion Evidence and the RFC Determination

A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. §§
404.1545(a)(1), 416.945(a)(1). Ordinarily, RFC is the individual's maximum remaining ability
to do sustained work activities in an ordinary work setting on a regular and continuing basis, and
the RFC assessment must include a discussion of the individual's abilities on that basis. A
regular and continuing basis means eight hours a day, for five days a week, or an equivalent work
schedule. *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*,
198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a
physician's opinion. 20 C.F.R. 404.1546(c). In determining RFC, the ALJ can consider a variety
of factors including a treating physician's or examining physician's observations of limitations,
the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting
effects of all impairments even those not deemed severe. *Id.* at § 404.1545(a). Age, education,
past work experience, and transferability of skills are vocational factors to be considered.
*Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by
evaluation of exertional and nonexertional limitations. Exertional limitations include claimant's
ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. §§ 404.1569a(a),
404.1569a(b), and 416.969a(a). Nonexertional limitations include mental impairments and
difficulty performing the manipulative or postural functions of some work such as reaching,

handling, stooping, climbing, crawling, or crouching. *Id*.

"The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Roat,* 717 F. Supp. 2d at 267 (citation omitted). RFC is then used to determine the particular types of work a claimant may be able to perform. *Whittaker*, 717 F. Supp. 2d at 440.

Plaintiff argues that the ALJ improperly dealt with medical opinions provided by treating physicians, Drs. Baird and Lax, and consultant Dr. Boehlert, concerning Plaintiff's physical abilities and, as such, the RFC was not properly supported by substantial evidence and was the product of legal error. (Dkt. No. 11 at 8-10.) As discussed in more detail below, I find that the ALJ's failure to assign any weight to the opinion of Dr. Baird is reason for recommending remand. Additionally, for the reasons outlined below, I find that the ALJ did not properly analyze the opinion of Dr. Lax and, as such, remand is recommended for further consideration of Dr. Lax's opinion as well.

1.   <u>Treating Physician Rule</u>

Part and parcel to the RFC determination is the ALJ's review of the medical opinion evidence and the credibility of Plaintiff. With regard to the medical opinion evidence, the Court finds that the ALJ improperly weighed the medical opinions at issue in making the RFC determination because he failed to provide any weight to the opinion of Dr. Baird and he failed to provide "good reasons" for assigning treating physician Dr. Lax's opinion "little weight" and

"limited weight."

The medical opinions of a claimant's treating physician are generally given more weight than those of other medical professionals. "If . . . a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence . . . [it] will [be] give[n] controlling weight." 20 C.F.R.
§ 404.1527(c)(2). Medically acceptable techniques include consideration of a patient's report of complaints and the patient's history as essential diagnostic tools. *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). Generally, the longer a treating physician has treated the claimant and the more times the claimant has been seen by the treating source, the more weight the Commissioner will give to the physician's medical opinions. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)(I)).

An opinion from a treating source that the claimant is disabled cannot itself be determinative. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). However, a lack of specific clinical findings in the treating physician's report is not, by itself, a reason to justify an ALJ's failure to credit the physician's opinion. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998)).

 An ALJ who refuses to give "controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted). This analysis must be conducted to determine what weight to afford any medical opinion. 20 C.F.R. § 404.1527(c). This is necessary because the ALJ is required to evaluate every medical opinion received. *Id.*; *see also Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010) (finding that the ALJ failed to satisfy the

treating physician rule when he discounted a report because it was incomplete and unsigned).

These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. *Id.* at § 404.1527(c)(2)-(6).

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and the opinions are contradicted by other substantial evidence in the record. *Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2); *Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). Other findings, including the ultimate finding of whether the claimant is disabled, are reserved to the Commissioner. *Snell*, 177 F.3d at 133.

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). This is necessary to assist the court's review of the Commissioner's decision and it "let[s] claimants understand the disposition of their cases." *Halloran*, 362 F.3d at 33 (citing *Snell*, 177 F.3d at 134). Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand. *Snell*, 177 F.3d at 133; *Halloran*, 362 F.3d at 32-33. However, remand is unnecessary where application of the correct legal standard could lead to only one conclusion. *Schaal*, 134 F.3d at 504.

2. <u>North Country Orthopedic Group/Dr. Bruce Baird</u>

According to the records submitted on this claim, Plaintiff was treated at North Country Orthopedic Group ("NCOG") on several occasions in 1993 for complaints of low back pain with some leg discomfort. (T. at 204.) Thereafter, he returned to NCOG for right arm and shoulder complaints in 2003 and received physical therapy there for those complaints. (T. at 205-07, 209-213.) In late 2005 and early 2006, he was treated for right knee symptoms and was diagnosed with a medial meniscus tear. (T. at 207, 214-15.) He was treated for removal of a foreign body in his right thumb in 2008. (T. at 208, 219-21.) Beginning in September of 2008 and continuing through 2010, he was treated again at NCOG for low back pain with lower extremity radiculopathy. (T. at 216-18, 222-40.) An MRI showed mild degenerative changes at L4-5 and L5-S1 without stenosis or foraminal narrowing, and he was diagnosed with lumbar degenerative disc disease. (T. at 222.) The back condition was treated conservatively until he received three epidural steroid injections in December of 2009 and January of 2010. (T. at 229-33.) On March 5, 2010, a nerve conduction study of his lower extremities revealed "chronic or old mild left L5 radiculopathy" and no other definite findings. (T. at 235-37.) Plaintiff was then seen by Dr. Baird at NCOG on March 8, 2010. (T. at 238.) Dr. Baird opined that Plaintiff "would probably have a moderate-to-marked level of impairment, or 66% based on Worker's Compensation guidelines. Again, I would tend to consider it permanent." *Id.*

The ALJ mentioned Plaintiff's back treatment when making the severity determination at Step Two. (T. at 15-16.) However, Plaintiff's treatment at NCOG and the opinion of Dr. Baird were not discussed at all by ALJ Ryan in his determination of Plaintiff's RFC. *See* T. at 17-19. The Court finds this omission constitutes error. Although a determination regarding disability

status by another governmental agency is not binding, it is entitled to some weight and should be considered. *See Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975). Here, the ALJ did not acknowledge Dr. Baird's opinion at all, and did not assign any weight to his determination of disability. It may well be that Dr. Baird's opinion is not entitled to great weight or controlling weight, or will not change the outcome of Plaintiff's RFC; however, it may also be that a consideration of the opinion does indeed change Plaintiff's RFC. The point is that it is not possible on this record to determine how Dr. Baird's opinion would affect the Plaintiff's RFC since it apparently was not considered by the ALJ. In this instance the Court is unable to determine the ALJ's rationale for seemingly ignoring Dr. Baird's opinion such that it is impossible to determine if correct legal standards were applied or if the RFC is based upon substantial evidence. Therefore, I recommend that the case be remanded for consideration of Dr. Baird's opinion.

### 3. Dr. Michael Lax

The ALJ gave "little weight" and "limited weight" to the opinion of a treating physician, Dr. Lax, regarding Plaintiff's functional capabilities and limitations because the opinion was "not consistent with findings from his own treatment notes or other clinical findings of record." (T. at 19.) Plaintiff asserts that Dr. Lax's opinion does not support Plaintiff's RFC as determined by ALJ Ryan, and that the ALJ should have obtained clarification from Dr. Lax because the ALJ faulted Dr. Lax for listing "a series of symptoms but [he] identifies no particular diagnosis to support those symptoms." (T. at 19; *see also* Dkt. No. 11 at 8, 10.) Defendant Commissioner argues that the weight the ALJ assigned to Dr. Lax's opinion was supported by the record was fully explained by the ALJ. (Dkt. No. 13 at 5.) The Court finds that the ALJ failed to give good

reasons for assigning limited/little weight to Dr. Lax's opinion and the ALJ should have further developed the record regarding Dr. Lax's opinion.

Plaintiff was treated in Dr. Lax's office for complaints of fatigue, dyspnea on exertion, abdominal pain, and a history of asbestos exposure on approximately five occasions in 2012. (T. at 315-24, 332-47.) In a medical source statement dated July 16, 2012, based upon treatment dates of January 4, 2012, February 21, 2012, April 3, 2012, and June 27, 2012, Dr. Lax opined that Plaintiff had exertional limitations of occasionally lifting ten pounds and frequently lifting less than ten pounds in an eight hour work day; he could stand and/or walk six hours in an eight hour work day; he could sit less than six hours in an eight hour work day; and he was limited in pushing and pulling in both his upper and lower extremities. (T. at 325-27.) Dr. Lax also noted Plaintiff had postural limitations, environmental limitations, and limitations in reaching in all directions due to pain, the medications Plaintiff takes, and shortness of breath with physical activity. (T. at 327-29.) The ALJ noted these limitations were not consistent with Dr. Lax's treatment notes, or other evidence of record. (T. at 19.)

However, at an exam in Dr. Lax's office on January 4, 2012, Plaintiff's lung sounds were "extremely decreased" (T. at 316), and pulmonary function tests completed on that date revealed "probable" restrictions (T. at 323-24); CTs of his chest done show a subpleural nodule (T. at 191-92, 241, 243-44, and 320.) As noted above, Plaintiff was treated at NCOG for low back pain with lower extremity radiculopathy. (T. at 216-18, 222-40.) An MRI showed mild degenerative changes at L4-5 and L5-S1 without stenosis or foraminal narrowing, and he was diagnosed with lumbar degenerative disc disease. (T. at 222.) He received three epidural steroid injections in December of 2009 and January of 2010 for his low back condition. (T. at 229-33.) A nerve

conduction study of his lower extremities revealed "chronic or old mild left L5 radiculopathy." (T. at 235-37.) Consultative examiner Dr. Boehlert found Plaintiff's lumbar flexion was limited and he had positive straight leg raising bilaterally sitting and lying down. (T. at 303.) Dr. Lax also found Plaintiff had shortness of breath on exertion, wheezing, decreased range of motion in the right upper extremity and lumbar spine, and positive straight leg raising bilaterally while seated. (T. at 340-42.)

Additionally, the ALJ failed to comment on Dr. Lax's treatment relationship with Plaintiff and the nature and extent of that treatment. The record reveals that Dr. Lax is a specialist in occupational medicine and Plaintiff was treated in Dr. Lax's office on five occasions in 2012. (T. at 315-347.)

The ALJ also faulted Dr. Lax for setting forth his opinion "[i]n the form of a checklist with no documented observations or clinical findings in support of the restrictions reported." The Court notes that Dr. Lax's opinion was set forth on Social Security Form HA-1151. (T. at 325-331.) Dr. Lax indicated on that form that he made clinical findings of "[i]nspiratory + expiratory wheezing, dyspnea/shortness of breath . . . decreased cervical range of motion; rhonchi[;] mid back pain/rib tenderness/abdominal discomfort/pain with palpation[;] decreased breath sounds throughout." (T. at 325.) The treatment dates noted by Dr. Lax in rendering his opinion were "1/14/12 [sic], 2/21/12, 4/3/12, 6/27/12." *Id.*

At an exam in Dr. Lax's office on January 4, 2012, Plaintiff's lung sounds were "extremely decreased" (T. at 316), and pulmonary function tests completed on that date revealed "probable" restrictions (T. at 323-24). However, Plaintiff's range of motion in the cervical and lumbar spines was noted to be full. (T. at 316.) On February 21, 2012, Plaintiff exhibited

14

normal breath sounds. (T. at 321.) There are no physical exam findings for the encounter of April 3, 2012. (T. at 335.) However, the treatment notes indicate Plaintiff complained of pain in chest and neck, shortness of breath with exertion, and wheezing when trying to sleep. (T. at 334.) Notably, there are not any treatment notes for an encounter of June 27, 2012, in the administrative record, yet Dr. Lax, in his "checklist" opinion, indicated he treated Plaintiff on that date. (T. at 325.) There are treatment notes, however, for August 28, 2012, in which Plaintiff, on exam, was found to have shortness of breath, wheezing, back pain, and a gait problem.

The ALJ has a duty to affirmatively develop the administrative record in light of the non-adversarial nature of a benefits proceeding, regardless of whether the claimant is represented by counsel. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citations omitted). This includes a duty to contact treating and other medical source to clear gaps in the record. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The duty of an ALJ to develop the record is "particularly important" when obtaining information from a claimant's treating physician due to the "treating physician" provisions in the regulations. *Id.* at 80 (citing *Clark*, 143 F.3d at 118). This must be done before an ALJ can reject a treating physician's diagnosis. *Id.* The Secretary's regulations "state that '[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . [and] will make *every reasonable effort* help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d) (emphasis added); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Moreover, "a treating physician's 'failure to include . . . support for the findings in his report does not mean

15

that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case.'" *Rosa*, 168 F.3d at 80 (quoting *Clark*, 143 F.3d at 118).

The Court finds that the ALJ failed to fully develop the record concerning Dr. Lax's treatment of Plaintiff and therefore the assignment of "limited" or "little" weight to Dr. Lax's opinion is improper and the RFC determination is not based upon correct legal standards or substantial evidence. There is no indication that the ALJ attempted to obtain Dr. Lax's apparently missing treatment notes from the June 27, 2012, encounter. These notes should be obtained and reviewed in order to properly determine the weight to give Dr. Lax's opinion. The Court recommends the matter be remanded for further administrative proceedings including obtaining a complete record from Dr. Lax so that the opinion evidence may be properly evaluated in determining the RFC.

### B.      Credibility Evidence and the RFC Determination

The Court reviews an ALJ's findings of fact under a substantial evidence standard. "It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation and internal punctuation omitted). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529; *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); *see* SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996). The ALJ is required to consider all of the evidence of record in making his credibility assessment. *Genier,* 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3)). First, the ALJ "must

consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms."  SSR 96-7p, 1996 WL 374186, at *2.  This finding "does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms."  *Id.*  If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities.  *Id.*  An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled.  *Id.*

Here, the ALJ determined that Plaintiff's medically determined impairment could reasonably be expected to cause the symptoms alleged by Plaintiff.  (T. at 17.)

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "'consider the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence.'" *Genier,* 606 F.3d at 49 (quoting 20 C.F.R. § 404.1529(a)); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").  This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the

claimant's ability to perform basic work activities.  SSR 96-7p, 1996 WL 374186, at *2.

The ALJ must consider all evidence of record, including statements the claimant or others make about his impairments, restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings.  *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3)).  A claimant's "symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone."  SSR 96-7p, 1996 WL 374186, at *3.  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors:  (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3)(I)-(vii); 416.929(c)(3)(I)-(vii).

Here, Plaintiff argues that the ALJ erred in considering these factors since the ALJ did not properly review these symptom related-factors because he did not discuss Plaintiff's medications and side effects of medications.  (Dkt. No. 11 at 13.)  Plaintiff also submits that the ALJ erred because he considered that "Plaintiff's activities were not limited to the extent one would expect because he cares for pets, performs personal care activities, drives, prepares meals and is able to

go out alone." *Id*. at 11 (citing T. at 18).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, 96 Civ. 9435 (JSR)(SEG), 1999 WL 185253, at *5, 1999 U.S. Dist. LEXIS 4085, at *15-16 (S.D.N.Y. Mar. 25, 1999) (citations omitted)). "A finding that [a claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel Williams*, 859 F.2d at 260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony "undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not" disabled). "Further, whatever findings the ALJ makes must be consistent with the medical and other evidence." *Id*. at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

In making the credibility determination here, the ALJ reviewed Plaintiff's diagnostic test results, physical exams findings regarding his back pain and lung function, his activities of daily living, and his work activities. (T. at 18.) While the ALJ did not discuss Plaintiff's medications and side effects, and the record shows Plaintiff regularly took pain medications (T. at 37, 205-07, 209, 216, 222, 226-27, 302, 336, 343-44), I nevertheless find that the ALJ set forth his reasons as to his credibility finding with sufficient specificity. However, since I am recommending the case be remanded for a proper evaluation of the opinion evidence in the context of determining the RFC, the ALJ should also re-evaluate Plaintiff's credibility by including an assessment of

Plaintiff's pain medications and how that assessment may affect his credibility.

### C. Step Five Determination and the Application of the Guidelines

Plaintiff lastly argues that the ALJ erred in applying the Medical-Vocational Guidelines at step five of the sequential evaluation process arguing that Plaintiff had significant nonexertional impairments requiring the determination to be based upon a vocational expert opinion. (Dkt. No. 11 at 13.) Defendant Commissioner asserts that ALJ appropriately relied on the application of the Medical-Vocational Guidelines at step five. (Dkt. No. 13 at 9-10.)

Generally, the Commissioner meets his burden at the fifth step by resorting to the applicable Medical-Vocational Guidelines (the "grids"). *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)). The grids take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience. *Id.* "Based on these considerations the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy." *Id.*

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner at step five to prove that a job exists in the national economy which the claimant is capable of performing. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c). Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country. 20 C.F.R. §§ 404.1566(a), 416.966(a). In making this determination, the ALJ may apply the grids or consult a vocational expert. *See Rosa*, 168 F.3d at 78; 20 C.F.R. pt. 404, subpt. P, App. 2. If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled. *Pratts v.*

*Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996).

However, if a claimant suffers from nonexertional impairments that "significantly limit the range of work permitted by exertional limitations," the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform. *Id.* at 39 (quoting *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e); *see also Zabala*, 595 F.3d at 410 (citing *Bapp*, 802 F.2d at 605). The vocational expert may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556 (GLS), 2004 WL 1144059, at *6, 2004 U.S. Dist LEXIS 5125, at * 18 (N.D.N.Y. Mar. 22, 2004). A nonexertional limitation is one imposed by the claimant's impairments that affect his ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments such as pain. *Rosa*, 168 F.3d at 78 n.2 (citing *Soblewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997); 20 C.F.R. § 404.1569a(c)). This is where the nonexertional impairment has more than a negligible impact on a claimant's ability to perform the full range of work. *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (citing *Zabala*, 595 F.3d at 411). An impairment is not negligible when it so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity. *Id.* (finding that the ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the grids). Nonetheless, the existence of nonexertional limitations does not automatically preclude reliance on the Medical-Vocational Guidelines, or require that the ALJ consult a vocational expert. *Zabala*, 595 F.3d at 411. Where the claimant's nonexertional limitations do not result in an additional loss of work capacity, an ALJ's use of the Medical-

Vocational Guidelines is permissible.  *Id.*

Here, the ALJ relied upon the grids and did not obtain the testimony of a vocational expert to determine whether jobs existed in the national economy for an individual with the Plaintiff's age, education, work experience, and residual functional capacity that incorporated Dr. Boehlert's limitations.  (T. at 19-20.)  However, as the Court has found above, the ALJ's determination of Plaintiff's RFC was not based upon substantial evidence or proper legal standards since he failed to discuss Dr. Baird's opinion in any fashion and he failed to give good reasons for giving only "limited/little" weight to Dr. Lax's opinion.  It also appears that treatment notes are not in the administrative record for all of Dr. Lax's encounters with Plaintiff which form the basis of Dr. Lax's opinion.  However, Dr. Lax noted in his opinion that Plaintiff had environmental limitations due to his pulmonary issues, and that his pain was exacerbated by cold, damp environments, and by vibrations.  (T. at 329.)  Dr. Lax also opined that Plaintiff had an impaired respiratory system which required minimal to no exposure to "[d]ust, fumes, chemical." *Id*.

As determined above, the ALJ's RFC finding was not based upon correct legal principals or substantial evidence.  Since the Court is recommending remand for proper determination of the Plaintiff's RFC, and since Plaintiff appears to have nonexertional limitations related to both pain and pulmonary functioning, I recommend that a vocational expert be consulted to determine whether jobs exist in the economy which Plaintiff can perform.  At the very least, on remand the ALJ should conduct an erosion-of-occupational-base analysis with respect to Plaintiff's environmental restrictions as required by SSR 85-15.  *See* SSR 85-15, 1985 WL 56857, at *8.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[3] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: February 25, 2015
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[3] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2005).